of PTSD, or post-traumatic stress disorder. And Young was not qualified. She had not taken any kind of special training on diagnosing PTSD. Not that she interviewed the child and determined that she had suffered from that either. But she was a psychologist, but she had not particularly been trained in the CSAAS. She said she had taken classes that involved instruction in that, but not particularly in this one, this type of syndrome. But, you know, we're also talking about a syndrome that, I mean, it's not universally accepted in the psychological community. To say that she's an expert in something that a good portion of the psychological community doesn't even believe is valid, how can she be an expert in something that... So that no one would be an expert? They shouldn't be. Not if this type of, not in as far as using it as something that can predict behavior, no. Perhaps you could be an expert in using it to help, to use it the way it was intended to be used, which is to help in therapy with your clients, if you're dealing with them and dealing with their behaviors, and trying to understand why they may be acting the way that they are. But certainly there's no one who can be an expert in predicting human behavior, let alone children who have suffered from a number of different types of traumas to be able to predict that they will act in a specified manner according to these five steps. This is supposed to be a special type of syndrome, is it not? As far as a special type of PTSD? That's what the state had put it forth as being when it was introduced, but it's never been recognized in the DSM as a type of PTSD, like, say, rape trauma syndrome has been. Well, I thought I got the impression, tell me if I'm wrong, that this was supposed to be a syndrome that was exhibited by children who were being sexually abused by a family member or some other fiduciary. Exactly. The way that Dr. Summitt proposed it when he originally... How was this individual a fiduciary or a family member? She isn't. That's one of the reasons why this testimony isn't relevant in this case. The syndrome is only supposed to apply to children in a family situation with a caretaker or someone in a very close relationship. And it's supposed to have occurred over... Geographically, because I think he lived out of premises, didn't he? He lived downstairs. But A.L.'s mother also said that they only had a working relationship. I know Mr. Atherton said that there was a bit more of a romantic relationship going on, but the child's mother said this was not anything more than just a babysitting arrangement. Mr. Atherton's mother said it was a sexual relationship as well. Yes, yes. But the state who was proposing the testimony didn't give any sort of indication other than that there was a working relationship between them. But the syndrome requires... There has to be this imbalance of power. You have to have a child who is very dependent on the person who is abusing them. Otherwise, there's no reason to have the remainder of the characteristics. Well, let's talk about the... There is a case, and off the top of my head I'm not recalling what it is, is where the guy would take the young kid fishing. Do you remember which case? I'm sorry, I apologize. I know there's a number of them. I read so many of these. I don't know off the top of my head either, but there are... This is one of the problems that the psychologists who have been looking at the syndrome have found, that it's been expanded to include the bus driver, the guy who was fishing, people that don't have that sort of relationship. And that's one of the main criticisms of it, is that if that relationship is not there, you're not going to have this sort of need to accommodate. If you don't have to keep your family together, you're not going to behave in a certain way. So that's why... Assuming that it's error, how is it prejudicial? Because it seems to me that the defense presented testimony indicating that it wasn't worth the power to destroy it. Well, although the defense did put on Dr. Meyer, and he testified that the syndrome evidence had been discredited in some accounts, the type of testimony that was brought here was extremely prejudicial. First of all, it was the first evidence. It was reported as scientific evidence, but the jury hears scientific evidence. They believe scientific evidence. And Dr. Ann Young actually said that... Isn't it kind of difficult to believe scientific evidence when supposedly the inventor of that scientific evidence apparently repudiates his own science? Yes, but I mean... I think so, but I was talking about a jury who hears a woman say, look, there's a way that sexually abused children act. Well, what would have happened if Newton had discovered gravity and then floated out into space? I mean, you think people would have believed the theory of gravity? Well, I mean, that's a different... I mean... That's... I don't think he meant for you to answer that question. Oh, okay. Let's talk about the fishing story with Nelson. That was the case, Nelson. And in Nelson, they mentioned a whole plethora of cases, and they look at jurisdictions all over the country that require a fry hearing on a syndrome. And so one of the issues that you have raised is a fry hearing. Certainly, you don't believe that we need a fry hearing on this type of evidence when the cases are... There are a plethora of cases in this state and in other states throughout the country that never required a fry hearing on a syndrome. I absolutely disagree. I think there absolutely has to be a fry hearing. I mean, the Illinois that you can establish scientific acceptance, if you don't adequately litigate it, you can't just rely on it having previously been used before. Recently, People v. McNown, which is an Illinois Supreme Court case that involved the horizontal gaze nystagmus testing, that had been used in Illinois courts for years. It had been used in other courts, but the Illinois Supreme Court looked back at that and said, look, we've never had a fry hearing on that. Since it's been introduced, it's since been challenged, and that they decided they needed to go back and have a fry hearing on that. Did the appellate court in Nelson conduct a fry hearing in the appellate court? They did, but you know what? Science changes. Science has changed since the introduction of the syndrome. Since the syndrome was introduced in 1983, there's been a number of clinical studies involved to determine whether or not it is valid. And since then, you know, things have changed. We've had different psychologists determining that it doesn't really work. There's a lot of flaws in it. So we need to go back periodically and examine what are we considering scientific evidence? Is it still valid as our technology and our knowledge changes? And that's something that happened in this case. In 1983, there wasn't a whole lot known about sexual abuse. There wasn't a lot of information about it. So you're not saying that the eye test was established as faulty, correct? You're talking about the syndrome was established as faulty? No. I thought the Supreme Court determined that the test is acceptable if it's done by someone who has a proper foundation to admit the test, to administer the test. And they sent it back for a FRI hearing. But it got reexamined. It did get reexamined, but they found that it was an acceptable test, assuming that the officer or the individual administering it was qualified to do so. But in the same way, the CSAAS here needs to be reexamined. I mean, I'm not saying that maybe after having a FRI hearing and hearing all of this recent research, maybe another same thing. But the fact that it was never held in the first place is problematic since we have had all this additional information that's been discovered since it was introduced originally. And I think your opponent would argue that this would go to weight and not to the admissibility. I mean, you had an expert in this case, so the jurors had to weigh what expert to believe. Doesn't this expert testimony go to weight? It does, but it's severely, heavily on the side of the state, the fact that the type of evidence it is. And it's not a matter of this expert versus this expert. The defense's expert, Dr. Marra, wasn't allowed to testify that the child, anything about the way AO acted or her behavior, and he wasn't able to make any kind of conclusions regarding whether CSAAS applied to her. So having the expert who was able to say, look, we have this syndrome, this child acts like a child who's been sexually abused, the jury has no other option but they're going to say, well, if this child acts like she's been abused, she's been abused. I think they said that her behavior was consistent with the child who had been sexually abused. But if you have a syndrome that's called the child sexual abuse accommodation syndrome, you can't apply it to a child who hasn't been sexually abused. Why else would they be using this model of behavior on this child unless she was a child who's been sexually abused? And I think the jury could easily make that inference. Well, it's the same as battered wife syndrome. How could you have a woman who's considered a battered wife who hasn't been battered? Well, battered wife is completely different from that case because that's used as a defense. So you've got, it's the victim who is also the defendant, and the defendant's bringing that in and saying, this is the way I'm acting. So now the state is at a disadvantage because she's called a battered wife. Well, I don't know if you say the state, why should the state? I'm sorry. The defense is, again, at a disadvantage because she's called a battered wife. But she's using it as a defense. It's not, well, I mean. No, it would be the state at a disadvantage if the battered wife is raising it as a defense. So somebody's going to be at a disadvantage depending on the nomenclature of the syndrome. Well, not exactly because, I mean, there's also a distinction between the state using a syndrome to secure a prosecution and the defense, you know, giving a reason for it. I mean, I don't think you can really equate those things. You know, if the syndrome has no validity and the state's using that to secure their prosecution and we have the right to a fair trial and the defendants, I mean. Well, that's your argument, that it has no validity. That's why we're here. You bring up a good point. You had talked about in your brief, and I'll direct you there, you talked about whether or not this should be used in a case in chief or in rebuttal. I'll let you address that. Well, it makes a big difference, too. I think the majority of the cases do allow it in the case in chief. But in this case, there was never any allegation by Atherton that the child had recanted, that any of these things that it was brought up. I mean, there was no reason to bring the syndrome in to rehabilitate her because the defense hadn't in the first place challenged the reporting or the delay. They didn't do that on cross? No. What we're talking about is the difference between the way it's been applied. Obviously, the defense did cross-examine her and her inconsistencies between what happened in the DVD and what she could remember. But the syndrome is talking about certain behaviors that are contrary to human experience, why they delay, why they recant, particularly recantation. A lot of the other states, when they're dealing with this issue, they let it into recantation only. More delay. And delay, excessive delay. But at the same time, that's a particular challenge, and it's a challenge to saying your delay is because you're lying, and that's when the rehabilitation would have to come in. Whereas in this case, it's a matter of just cross-examining and finding inconsistencies in testimony. That's always going to be present, something like that. Is Frye supposed to be applied to science or social science? Science is social science. I think if you ask any social scientist, he's not going to say what he does is magic or, you know, truthfully. It's science. It's hardcore science based on human, you know, I mean, testing. But it's human behavior, but it's tested and it's put through rigorous. The scientific law is based upon observation, and it determines that based upon observation, this is what has been consistently and traditionally and historically observed. And social science, on the other hand, isn't as historical, isn't as traditional, and doesn't have the number of instances or experimentation to verify such that it becomes a scientific law. And I think you'd agree that this syndrome would not be proven to occur in every instance of sexual abuse, which means that this is not science. Science would say, if she were abused, this is what would happen in every instance. If you stop metabolizing oxygen, you die. If you can show me an exception to that scientific law, which is asphyxiation, Brownian motion says that the interactions between the molecules in the air prevent oxygen from falling to the floor, and we all have to lie on the floor in order to breathe. So the point is, is that when you say that's social science, you're not really, it isn't science. And Frye is supposed to be dealing with science. Right or wrong? Well, expert testimony based on scientific evidence. In this case, it was purported to say, look, we have this syndrome, abused children. In this situation, we'll act like this. And that's what you're saying. I mean, you're saying, you know, when you're putting it forth as science, as this is a prediction. It may be put forth as science, but whether it is or not is something else again. But again, you know. Any more questions? You'll have time to make the bubble. Thank you. Very interesting points. May it please the court and counsel. My name is Anastasia Brooks, and I represent the people. I very, very briefly wanted to talk about a couple of the other important issues. With respect to reasonable doubt, I wanted to emphasize the deferential standard review, because the child is making a very important distinction between where the defendant put his private versus where it actually went. And when she says, quote, it went in there, when it referred to anal penetration, that she very specifically clarified upon questioning what actually happened. So for those reasons, the evidence was sufficient to prove that charge. With respect to the claim of plain error for violation of Rule 430-1B, I'm not conceding that there was a rule violation, but at least wanted to emphasize that when the defendant makes the claim that this was a close case and that the evidence was closely balanced, you can't get past the fact, though, that there was a colposcopic medical examination which showed medical evidence of at least vaginal penetration. So for that reason, the state case was actually strongly weighted, and the first prong of plain error would not apply to the defendant's claim with respect to the claimed error during voir dire. And with respect to the main issue here, sort of by the defendant, the accommodation syndrome evidence, the state does allege that this is not science within the meaning of FRI, because this was merely, according to Dr. Summitt's proposal, his experience derived from clinical observation of human behavior in the subjects in which he had been working with. So there's no actual novel scientific methodology at issue here if the defendant's reply mentions, well, this has to be science because it's inductive reasoning based on observation. It's not a novel methodology, even if that is science. So there's no novel methodology to be subject to a FRI hearing. If the defendant filed a motion to dismiss on the basis that the syndrome did not comport, or the definition of the syndrome did not comport with the actions or the characteristics of a particular victim, would that be sufficient to establish that the state could not prove beyond a reasonable doubt that the act occurred? I didn't quite follow the question. Is dismissing or excluding? If this is science, it's supposed to establish a fact. Okay. And the scientific method basically says you prove nothing. What you really do is you disprove theories which would negate the theory for which you are proselytizing or proposing. Therefore, if you can establish that this particular victim is not exhibiting the syndrome, then this victim wasn't a victim because if she were a victim or he were a victim, they would be exhibiting the syndrome. And therefore, if the defense can prove that the syndrome doesn't apply to this particular individual, has the defendant literally proved through an affirmative defense that he or she is not guilty of the offense? You're questioning me with respect to falsifiability, with respect to what's considered science? No, not quite. Okay. I didn't quite understand. I'm saying if the apple floats out into space, does that prove that gravity doesn't exist? You don't have to answer that either. Okay. But the point I'm trying to make is if this is supposed to be scientific evidence and it's supposed to establish that this child was injured, abused, and it's supposed to be observable evidence that this occurs, and in a motion limiting or a motion to dismiss, the defendant establishes that the exhibition isn't there, has the defendant established that the crime didn't occur? Well, this isn't a type of syndrome. The question is without the syndrome, would you be without a case? No, that wouldn't negate the case because it's not necessary that in order for a person to have been sexually abused that when the defendant talks about that this is a syndrome that is almost a near infallible predictor of human behavior and it was never presented to the jury that way, it was not considered that if a child was sexually abused they would of necessity delay in reporting for these reasons. It's just that in Dr. Summon's experience and the experience of the psychologists who have followed and developed this theory in the meantime, that if there is a delay in reporting, and according to Ian Young, our expert witness, who described what this theory says, is that it is not necessarily going to be fabrication. Is the victim's delay in reporting the only reason this was offered? The defense points out that the offender was not a family member, there was no recantation. What aspects of the syndrome actually appear in this case?  With respect to the part of the question, yes, it was offered to explain the delay in reporting because the defense did cross-examine about the delay and the fact that she didn't tell her mother right away and that she hadn't seen the defendant since 2002 and she didn't disclose it until sometime around 2005 to her stepmother. That was the purpose here. And Ian Young did talk about the components of the accommodation syndrome that she drew upon in giving reasons why, and also she did say in Record 1247 that in her knowledge of this particular theory, it does apply to babysitters, and that's what she said in the record. And if the defendant wants to essentially retry the case in the appellate court and cite law reviews and evidence of competing psychological authorities to sort of dispute the facts of the case with respect to what is the syndrome, what's the theory, is it based really only on what Dr. Summitt said two decades ago or more, or is it, you know, is this theory, should it be developed by other psychological evidence in between, which is what Ian Young discussed. She talked about her own experience with child sex abuse victims. She talked about other training and experience and education she's had with respect to this theory. So it's not grounded in what Dr. Summitt said in one paper a long time ago necessarily. So essentially we're stuck with what is in the record, what is in the testimony, and when the defendant wants to cite law review articles to try to criticize, essentially saying that, oh, this syndrome has no validity. Well, that's something for the jury to consider based on evidence that was presented at the trial, and this court should be confined to that record on appeal except for that limitation doesn't apply to a FRI hearing. However, FRI is not going to apply because, as I said, this isn't science, and FRI applies to science. So therefore there's no need to hold a FRI hearing in the appellate court citing law review articles and other things outside of the record. Let's talk about the record real quick since you're limited on time. You kind of brushed over this, but let's talk about her testimony, which was in the record with respect to her butt. She said, it was kind of in my butt. When they asked her, did you feel anything, she said no. He didn't put it exactly where I pooped, she said. How do we find that the jury was correct in finding that there was penetration, if you will, and I know the definition of penetration, any contact, no matter how slight, with respect to the butt? Well, she was directed to anus. That's actually what it was, not just butt absence because you had to be very precise in terms of what body parts are being involved here. I just emphasized when she says he didn't exactly put it, she kind of transposed those words, it seems. So she's talking about where he put it and where it actually went is a different thing. And when she said she didn't really feel anything, the testimony, Moni, was that anuses are designed to stretch to accommodate stools and there was no physical evidence of trauma like there was with the hymen. So therefore, if she knew it went inside, she must have felt it. So it's not like she didn't feel anything when she didn't really feel it. She was talking about the pain that she was, she was contrasting it with the pain that she would have felt when there was the actual injury to the hymen from the other penetration. But did they bring that out in the record? I didn't see that in the record. Well, these are inferences that can be drawn by a reviewing court on appeal. Any reasonable inference in support of the conviction can be drawn and must be drawn by the appellate court. And so there is sufficient evidence here for those reasons. Is this close case evidence? The close case with respect to, as they said, the physical evidence corroborates the fact that there was trauma to the hymen. And that was the 6 o'clock position. And the medical evidence expert says that this is evidence of actual penetration. So this isn't just something that could have happened accidentally. I don't think there's an injury time period, though. It's like two years ago, six months ago, six weeks ago. To connect the injury with a particular offender? Well, the only person that she'd ever alleged with that this had happened, and this was also in a situation. You're not answering my question. I'm sorry. Was there any evidence, testimony as to when the injury occurred? No, there was no actual specification that it must have occurred during a particular time period. But my point is that there was no allegation against other people, although there had been other caretakers in the meantime. Two years has passed, and she's not being babysitting anymore by this particular person. So there's no motive for her to point to the defendant and say, when she reads the birds and bees book, to say now she understands what was going on. There's no motive at that point for her to go back and blame Frank Atherton for something that he did to her, like, years prior. So given that there's no motive to lie and the mother said stuff about how she didn't take, please take me to work, she was pleading not to be left alone with the defendant. So there's other circumstantial evidence that also corroborates that this is the defendant that did it, and there was no claims against anyone else in the meantime. Can you distinguish Oliver from this case? Oliver, I'm sorry, I don't recall. The Oliver's where the victim testified, quote, in my book, end quote, and the court reversed, saying that wasn't sufficient evidence of anal penetration. Well, the reason why Oliver is distinguishable is because there was this distinction here about where she talks about where she poops, and that's an elaboration that's not mentioned in Oliver. And there's also the clarifications that she was made about putting it inside. And so there was more of a factual elaboration in this record than was disclosed in the Oliver opinion. And even in that respect, the Oliver opinion should, I think there was some confusion or whatever that was also an issue in Oliver that's not present here. So there's like a worse fact in Oliver that's not present here, and there's more facts here in favor of conviction that are not present in Oliver. So it's distinguishable on the facts. And if it's not distinguishable on the facts, it's also, I would think, that Oliver, that argument can be made that it could have been wrongly decided, because the review courts have to give deference to the factual findings of the prior fact and make reasonable inferences in favor of what's in the record. So for that reason, if she said it was inside, how could it be inside a buttocks, essentially, which is a muscle? So the orifice would be the anus, and if it went inside, that's what it would have had to have happened. So I would think also, circumstantially, they talk about the victim being on her stomach, and if the defendant was over her, like doing push-ups, as you described, circumstantially it's easier for the anal penetration to occur from that position as well. So it is distinguishable. I just want to make a couple of points with respect to accommodation syndrome again. The defendant seems to assume that only scientific evidence is admissible as expert testimony, making a reference to astrology, but here it's human experience and observation. So it's notóFrey is also not needed just to exclude any sort of so-called far-fetched theories of human behavior. It's notóthat's not the point of Frey. Frey is supposed to keep out stuff that's scientific in nature, which unduly sways jurors if it's acquainted with the truth, and for that reason, Frey is not supposed to be this sort of gatekeeper of all expert testimony, and expert testimony doesn't have to be scientific. So here it was properly rehabilitative to dispel myths about post-abuse behavior. It was not a diagnosis offered to prove that the molestation occurred. The witness did not say, well, she had these symptoms, that's circumstantial proof of abuse. Instead, she offered reasons why a delayed reporting could be consistent with actual abuse, not assuming that abuse occurred because she didn't even actually interview the victim, but merely to show that from child psychology's experience with people who had been abused, delayed reporting does not necessarily mean that the story was fabricated. And obviously she had overwhelming qualifications in terms of her own experience, education, and training, and reading materials with respect to the syndrome. Is there an instruction given about how the jury can consider the opinion of the witness, but not necessarily the underlying facts that they derive their decision from? I don't believe that there was any specific instruction offered with respect to that type of testimony. Relative to expert testimony. Right. That they can and cannot consider.  I don't think there was anything like that that I remember. So for those reasons, if the State has no further questions, we request that the conviction sentences be affirmed. Thank you, Your Honors. I'd like to address some of the questions that arose. First, Your Honor had asked that if the defendant had made a motion ahead of trial to have the syndrome testimony kept out because it did not apply to this particular victim, the answer is yes, because the evidence was not relevant. And he could have objected on that ground that it was not relevant because it did not apply in the circumstance and the trial court should have granted it. Again, your question saying does the apple float into the air, does that mean that there's no gravity? It could mean there's no gravity, but it could also mean that it's floating in the air for another reason. And that's one of the problems with the syndrome testimony. A child could be behaving in this manner because she's been abused sexually or she could be acting in that manner for many other reasons. That's one of the main criticisms that comes from other psychologists who have looked at this syndrome since it's been introduced. And that goes to another point the State brings up that Anne Young said that since the syndrome was originally proposed, it has been able to include a babysitter, that other psychologists have looked at this and expanded the scope of it. It's one of the problems with it and it's one of the reasons why it needs to be readdressed and relooked at to see if it's still continuing to be valid in the face of all the subsequent research and application. Another point, counsel made the point that it was not science because Young was relying on her observations in determining that the syndrome applied to AO in this case. That's not entirely true because AO didn't just observe, I mean, excuse me, Young did not just observe AO. She watched the video. But she relied on Dr. Summitt's guideline, his five-step guideline that said children behave in this manner. So it wasn't a matter of her just saying, I watched AO, I spoke with her, I talked with her, we had an interview, and then based on all of my experience dealing with other children, this is why I believe that she is acting in this manner. She didn't do that. She saw an interview on a DVD and said, I'm applying this model of children's behavior to this particular child. Let's see. Also, when we're dealing with the error and whether it's plain error under the Rule 431 error, whether it's plain error here, one, I mean, this Court's really recent decisions, there's two of them, Rogers and I believe Patrick, have said that one of the things you need to look at when you're determining if there is plain error is the facts and circumstances of this case. So in the facts and circumstances of this case, we can't overlook the fact that this improper evidence was introduced regarding the sexual abuse syndrome. The facts were very close in this case, not just in regards to the count two, which was the anus-to-penis contact, but all over. Wait a minute. Why is it that you feel that 431 was not followed? Well, in this case, the trial court never asked the jurors if they understand, but more egregiously, he never advised any of them that the defendant did not have to present evidence. But he did present evidence. He did present some evidence. And he testified on his own behalf. He did. But we're talking, this is, I mean, this is a case where there was expert testimony, expert testimony that there was the medical testimony. There was also expert testimony regarding someone who said. I understand that. But what does that have to do with your indicating to us that the trial court didn't follow 431? They had to advise him of certain things. What things did they not advise the jurors of or not ask the jurors? He did not tell the jurors that the defendant does not have to present evidence. Correct. And he did also not say, he didn't say, do you understand? He said, are you willing to follow? So it was not the, did not track the exact language of rule. He asked whether they had any difficulties with the proposition. Difficulties and are you willing to, but not, do you understand and do you accept? But the problem lies also, too, with the fact that he never at any point said, you know, the defendant does not have to present evidence. So if the defendant did not present any evidence, wouldn't you have a stronger argument? It would be absolutely a stronger case, but it's still strong in this case because the type of evidence. I mean, the jury, if they don't know that the defendant does not have to present evidence, they're not going to know that the defendant doesn't have to present a counter-medical opinion. They're not going to know that he doesn't have to have another physician examine AO to find a different result. He doesn't have to have a different psychologist interview or, you know, decide, determine whether or not the syndrome evidence applied to her. They did not have that. Didn't the court actually ask whether or tell the jury that the defendant did not have to prove his innocence? He did not have to prove his innocence. And it was wrapped up in with the state's burden. The state has the burden of opinion. But if you look at People v. Chester, that says that if a court admonishes and asks questions on not proving innocence, that actually translates to not having to present any evidence. And respectfully, I would say that Chester was wrong, that there's a reason that the Illinois Supreme Court made that a particular and specific admonishment. They could have wrapped it up and said, you know, the state has a burden of proof, and the defendant doesn't have to prove his innocence, but they didn't. They made a very specific additional admonishment that the court has to give, saying the defendant does not have to present evidence. But doesn't the litany of cases from the Supreme Court down to all of the appellate court cases say that the judge does not have to follow those admonishments word for word? Well, the Supreme Court hasn't ruled on 431 since they amended it. It's pending right now. Thompson or Thomas, I believe. So the previous ones, it wasn't the same kind of thing. The court did not have that mandatory requirement to admonish the jury in the same manner. And since the Supreme Court has amended the rule, I mean, it's given its indication that this is so very important that it has to be done, it has to be done every time, and it has to be done correctly in this manner. Verbatim. Verbatim. Or at least as close to verbatim as possible. I think there's a reason that they wrote it the way they did. No other questions? We'd ask that you reverse count two and remand for trial in count one. Thank you. Thank you. The case has been taken under advice and will be a short recess.